EMERY COOPER *v.* INDIANA GAS & WATER CO. AND LEHIGH
PORTLAND CEMENT CO, INC.

[No. 1-178A12. Filed October 19, 1978. Rehearing denied November 30, 1978.
Transfer denied April 6, 1979.]

*Mark Peden, Foley, Foley and Peden*, of Martinsville, *Ira B. Zinman*, of Bloomington, for appellant.

*William V. Hutchens, Locke, Reynolds, Boyd & Weisell*, of Indianapolis, for appellees.

LYBROOK, P.J. — Plaintiff-appellant Emery Cooper asks this court to consider whether the trial court abused its discretion in denying his motion for relief from judgment under Ind. Rules of Procedure, Trial Rule 60(B)(3) which allows a trial court to relieve a party from a final judgment if it finds "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party."

Cooper sustained serious injuries on June 21, 1961, in a natural gas explosion on the property of Lehigh Portland Cement Co., Inc., in Mitchell. Cooper filed a complaint for damages against Lehigh and Indiana Gas & Water Co. (now Indiana Gas Company, Inc.) on June 20, 1963. In his last amended complaint filed May 12, 1965, Cooper alleged, *inter alia*, that Indiana Gas was negligent in failing to introduce into the natural gas supplied to Lehigh sufficient odorizer to make its presence in the atmosphere detectable.

Over 14 years after the explosion, the case went to trial in Morgan Circuit Court after changes of venue from Marion and Hendricks Counties. The jury returned a verdict for the defendants.

Cooper appealed the judgment to this court on the issue of the admissibility of certain depositions, and we affirmed. *Cooper v. Indiana Gas & Water Co.* (1977), 173 Ind.App. 47, 362 N.E.2d 191.

Cooper's motion for relief from judgment under TR. 60(B)(3) was denied after a hearing, and this appeal followed. We affirm.

Cooper characterizes his basic allegation as "misconduct" at trial on the part of Indiana Gas. The "misconduct" he alleges falls into the second TR. 60(B)(3) category, misrepresentation.

He claims the following misrepresentations were made in the trial testimony of two defense witnesses, both Indiana Gas employees:

(1) Paul Vail failed to disclose relevant documents which he had in his briefcase at trial, failed to correct errors in the testimony of fellow employee Harry Maddox, and testified erroneously as to two material elements of plaintiff's case.

(2) Maddox testified erroneously.

Plaintiff raises no issues for review which relate to Lehigh.

In a case of first impression, *McFarland v. Phend and Brown, Inc.* (1974), 161 Ind.App. 695, 317 N.E.2d 460, this court formulated a two-part test for the application of TR. 60(B)(3).[1] We held that relief under the rule requires that the moving party show: 1) that the person under oath knew or should have known from the information available to him that the representation he was making was false; and 2) that the misrepresentation went to a material fact which would change the trial court's judgment.

During the 14 years between the filing of the original complaint and the trial, plaintiff's attorneys completed no discovery,[2] the only discovery being defendants' depositions of three of their witnesses. During the presentation of defendants' evidence, plaintiff's attorney cross-examined witness Vail and the following exchange took place:

"Q. You say that there was a man checking the odorizing machine every week and you checked it every, twice a month you said.

A. Yes.

---

1. This test is cited in *Rhoda v. Northern Indiana Public Service Co.* (1976), 171 Ind.App. 401, 357 N.E.2d 287, at 289, footnote 5.

2. Plaintiff was represented by a series of attorneys over the years. His attorney at trial entered his appearance approximately nine months before trial.

Q. Where are the records for those checks?

A. My checks?

Q. Yours. Do you have your check records?

A. I, I don't, do not make a written record of my checks.

Q. Didn't the man who was servicing that keep a log of the service that was on that machine?

A. He just noted the amount of odorant that was in the storage tank.

Q. Didn't you think it would be important to have that record here.

> Defendants' Attorney: Now I object to that, your Honor. The burden of proof is on the Plaintiff and not the Defendant. He knows it. If he wants it, he can subpoena it.

Q. Do you know if it is in existence, Mr. Vail? That record.

A. Yes, it would be.

Q. Pardon?

A. It is.

Q. It is in existence? Well is, any particular reason why you didn't bring it?

A. No.

Q. You see now why it might be important to have that sort of record?

> Defendants' Attorney: I object to this question, your Honor. If he wants it, then he can ask for it and we'll find it for him, but he . . .

> Court: I'll sustain the objection."

After the case went to judgment, plaintiff deposed Julian Piercefield, Indiana Gas officer, at which time Piercefield responded to a subpoena *duces tecum* and produced odorant records which had been transmitted to him by Vail for purposes of responding to the subpoena.

At the hearing on plaintiff's motion for relief from judgment, the following exchange occurred between plaintiff's attorney and Vail:

"Q. You were the person who, in fact, found the odorant reports that were produced here today?[3]

A. They were never lost.

Q. Were never lost.

A. No. They were here at the other trial.

Q. They were?

A. Yes.

Q. Why weren't they produced?

A. You didn't ask for them. In fact, if I recall, . . . I tried to put them in evidence and you objected so he backed down. But that's just my recollection.

Q. You think they were here?

A. I know they were here. I had 'em.

\* \* \*

Q. Why did you say [at trial] you didn't bring it.

A. I didn't say I didn't bring it.

Q. I said is there any particular reason that you didn't bring it and you said no. But you actually had it with you in the Court Room.

A. I had it during the trial. Yes, sir.

\* \* \*

Q. Why didn't you just say at the trial of that Cause that you had 'em right there on the table?

A. Why didn't you ask me if I had 'em.[4]

\* \* \*

---

3. The question refers to monthly odorant reports for the Mitchell and Bedford odorizing stations.

4. Plaintiff attempted in his brief to make much of a subpoena *duces tecum* served

Q. What other records did you have with you at the trial beside these?

A. One that's been introduced in evidence here.

Q. What is that?

A. I don't know. It's the odorant recap report or something."[5]

Plaintiff introduced into evidence at the hearing: 1) the monthly odorant reports for the Mitchell and Bedford odorizing stations for the 1961 year and the tabular summaries of these reports;[6] 2) tabular gas logs showing the amounts of gas purchased by Indiana Gas from its supplier during 1961 and the amounts of gas consumed each day at various points including Mitchell and Bedford; and 3) a summarized overview of odorant and gas consumption in the Bedford District[7] from June 19 to July 3, 1961, the period of time during which the explosion took place. None of these documents was introduced at trial.

After perusing some or all of these documents at the motion hearing, witnesses Vail and Maddox made changes in their trial testimony that had been based solely on recollection.

Vail testified at trial that, in 1961, the Mitchell odorizing station odorized all the gas consumed in the Mitchell-Bedford area and that the Bedford odorizing station had no connection with gas consumed in Mitchell and Bedford. At the hearing, he said that some gas consumed in Bedford was odorized in Bedford and that, therefore, the Mitchell odorizing station did not odorize all the gas consumed in Mitchell and Bedford.

---

during the trial on Indiana Gas Bedford District Superintendent Paul McCain, McCain's response thereto, and alleged discrepancies between McCain's compliance and the documents Vail knew to actually exist. The record of the proceedings, however, does not contain a copy of the subpoena *duces tecum* so we do not know what documents plaintiff tried to secure through McCain. A review of the trial and hearing testimony provides little illumination but does suggest that McCain's testimony was not related to the documents in Vail's possession.

5. Vail refers here to tabular summaries of the information contained in the monthly odorant reports previously mentioned.

6. These are the records in Vail's possession at trial.

7. The Bedford District included Bedford and Mitchell.

Maddox testified at trial that he refilled the odorant tank at the Mitchell odorizing station whenever he received a work order to do so and that the frequency of these refills depended on the flow of gas through the station and averaged about once every four or five weeks. At the hearing, he acknowledged that the odorant reports showed no odorant added between February 6 and June 9, 1961.

Vail testified at trial that odorant was added to the gas at the rate of 1.0 pound of odorant per million cubic feet of gas. At trial he acknowledged that the odorant manufacturer's recommendation allowed for the odorant rate to vary from a minimum of .5 pound to a maximum of 1.0 pound per million cubic feet of gas and that the actual rate at the Mitchell station had fluctuated over time.

Plaintiff alleges as his final evidence of misrepresentation, the following testimony of Vail at the motion hearing:

"Q. Then, in fact, when Mr. Maddox was on the stand you also had these documents in your possession?[8]

A. Yes, sir.

&ast; &ast; &ast;

Q. Did you know that your fellow employe was not testifying correctly at the trial?

A. I certainly did.

Q. You did?

A. Yes.

&ast; &ast; &ast;

Q. Now just two minutes ago you said you had those documents and that you knew at the time he was testifying that he was wrong.

A. Well, he gave a lot of testimony that wasn't right.

Q. Pardon?

A. He gave a lot of testimony that in my opinion wasn't right.

&ast; &ast; &ast;

8. The question refers to the odorant reports.

Q. So when Mr. Maddox testified at the trial of this Cause that he put in 339½ pounds or he put in a 55 gallon barrel every four or five weeks that he . . .

A. I probably wasn't sitting there looking at the odorant reports, no. They hadn't been entered. I hadn't, I wasn't sitting there reviewing them, no.

Q. Now you're trying to tell us that you didn't know he was testifying incorrectly?

A. I, I wasn't looking at the odorant reports.

Q. You didn't scan them at all at any time during the trial?

A. Probably, yes."

We can easily dispose of the allegation that Maddox was guilty of misrepresentation in his trial testimony. In 1961, Maddox was a pipefitter for Indiana Gas. His only responsibility toward the odorizer was to refill the tank when he received a work order to do so. He was not responsible for reading the meter or for keeping any records. Under the first part of the test in *McFarland, supra*, plaintiff must show that the person under oath knew or should have known *from the information available to him* that the representation he was making was false. Maddox is now and has been since 1965 a distribution foreman for Indiana Gas. He was asked at trial in 1975 to recall his work routine as a pipefitter in 1961. With no records to refresh his memory, he testified under oath from recollection. The defendant cannot be held responsible for the deterioration of the witness's memory during the 14 years this cause was pending. In addition, the frequency of the refills is immaterial. What is material is how much odorizer was used in proportion to the amount of gas consumed. Thus, the second part of the test in *McFarland, supra*, is also fatal to this contention of plaintiff.

We turn now to the conduct of Vail, his evasive answers in reference to documents he knew to be in his possession and his silence in the face of what he believed to be erroneous testimony by Maddox. We remind plaintiff that, under the adversary system, he has the burden of proving his own case, both at trial and at the hearing on his motion for relief from judgment. While Vail may have been less than forthright, we need not reach the issue of whether his conduct rises to the level of misrepresentation because we find that plaintiff

has failed the second part of the test in *McFarland, supra*. He has not shown that the odorant records and Vail's hearing testimony would have changed the judgment in the trial court had they been in evidence there.

Plaintiff contends that Vail's erroneous trial testimony that the Mitchell station odorized all the gas used in Bedford allowed Indiana Gas to put into evidence a document entitled Weekly Report of Gas Leak Calls, indicating that a Bedford customer had called to report that he had smelled gas around a space heater in his home the day of the explosion. Plaintiff contends that Vail's hearing testimony that the Mitchell odorizing station did not odorize all gas used in Bedford makes this evidence irrelevant and that its admission was prejudicial to the plaintiff. Even if this were correct, the evidence was merely cumulative. Three Mitchell residential customers testified that they smelled gas at their Mitchell residences the day of the explosion. Two other witnesses testified to smelling gas at the Lehigh plant the day of the explosion. The impact on the jury of the one Bedford report would have been minimal.

Plaintiff, however, defeats his own argument because he argues elsewhere in his brief, in relation to odorant rates, that Vail's testimony was that the Mitchell station odorized all Bedford gas except that going to the Bedford General Motors plant. If this contention of plaintiff were true, the report by a Bedford customer of a suspected gas leak at a residential address would be relevant.

Next, Vail testified at trial that the gas was odorized at the rate of 1.0 pound per million cubic feet of gas. Looking at the odorant reports, he acknowledged that the rate actually fluctuated between January 1 and June 25, 1961, from a low of .12 to a high of 2.20. He insisted, however, that the records showed the following relevant rates: 1) June 18 (three days before the explosion), 2.20; 2) June 25 (four days after the explosion), .86; 3) the average for June 19 to July 3 at the Mitchell station, .92; and 4) the average for June 19 to July 3 at the Bedford station, .93. Testimony at the hearing established that the odorant manufacturer recommended a rate within the range of .5 to 1.0 pound. Therefore, the slight discrepancy between Vail's testimony at trial and at the hearing was immaterial.

Plaintiff contends that the evidence of rate fluctuation, even though

prior to the explosion, would have been evidence the jury could have used in assessing the reliability of the odorizing equipment. In *McFarland, supra,* 317 N.E.2d at 462, however, the court emphasized that:

"After judgment, any discoverable evidence brought to the trial court's attention, which places the factual issues in a different light, may suggest a different judgment, but this is not the 'misrepresentation' covered by TR. 60(B)(3)."

In the case at bar, the new evidence does not even "suggest a different judgment." Plaintiff's evidence at trial and at the hearing was devoid of anything to substantiate his suggestion that the odorizing equipment might have malfunctioned the day of the explosion.

Plaintiff contends that the hearing evidence established that the Bedford odorizer serviced only that Bedford gas going to the General Motors plant, leaving the rest of the Bedford gas to be odorized at Mitchell. He alleges that this establishes that the odorant rate for the gas going to Lehigh on June 21, 1961, was only .396. Plaintiff's hearing evidence, however, fails to substantiate this contention. Vail did not so testify nor did the evidentiary documents so establish.

The court in *McFarland, supra,* 317 N.E.2d at 462, chastised the plaintiff-appellant for waiting eight years after the original complaint to begin discovery, finding this to be "less than reasonable diligence to determine the liability of a party who is being sued for negligence." Here plaintiff not only waited 15 years to begin discovery but also waited until the case had gone to final judgment.

The lesson of *McFarland* bears repeating:

"Litigation must be brought to an end as soon as possible to assure a fair measure of justice to the next litigant waiting to have his case tried. If a litigant can choose his own time to meet the issue upon which the court must render its judgment, the entire judicial system would collapse under the awesome weight of pending litigation. TR. 60(B)(3) was never intended to bring this result." 317 N.E.2d at 462.

A motion requesting relief from a final judgment addresses itself to the sound discretion of the trial court. *McFarland, supra; York v. Miller* (1975), 167 Ind.App. 444, 339 N.E.2d 93.

The hearing on plaintiff's motion involved five witnesses and several exhibits and generated a 299-page record. The trial court judge who had heard the trial testimony evaluated the hearing evidence and over-ruled plaintiff's motion. We find no abuse of discretion on his part and affirm his judgment.

Affirmed.

Lowdermilk, J., concurs.

Young, J., participating by designation, concurs.

NOTE — Reported at 381 N.E.2d 1250.