KEYSTONE SQUARE SHOPPING CENTER COMPANY, a Partnership, Ralph Wilfong and Milton J. Fineberg, Appellants (Defendants-Counter Claimants Below),

v.

MARSH SUPERMARKETS, INC., an Indiana Corporation, Appellee (Plaintiff-Counter Defendant Below).

No. 2–882A249.

Court of Appeals of Indiana, Third District.

Feb. 8, 1984.

Rehearing Denied March 20, 1984.

Tom R. White, Christian, Waltz, White, Klotz & Free, Noblesville, Willis K. Kunz, S. Gregory Zubek, Kunz & Kunz, Indianapolis, for appellants.

G. Daniel Kelley, Jr., Stephen M. Terrell, Ice, Miller, Donadio & Ryan, Indianapolis, for appellee.

HOFFMAN, Judge.

In 1970, appellant Keystone Square Shopping Center Company and Marsh Supermarkets, Inc. entered into negotiations for the lease of space in the soon to be completed shopping center. Marsh was to operate a store as an "anchor tenant" in the shopping center. The lease was com-

pleted and amended, and Marsh finally took possession of the leased premises in 1972.

Marsh agreed to pay Keystone $2.13 per square foot as the base annual rent, which totaled $56,232. In addition Marsh agreed to pay Keystone 1% of its gross sales in excess of $5,623,200. The store was operated with great success and achieved gross sales of approximately $9.5 million in 1978. At that time Marsh attempted to renegotiate its lease with Keystone to expand its store facilities into a neighboring space. These negotiations failed, and Marsh moved its store from the shopping center to a new location near Keystone in 1981.

While Marsh was preparing to open its new store in 1981, the leased premises were temporarily vacant. The store was then reopened and operated, by Marsh, as a Green Basket discount supermarket. Marsh filed a complaint for declaratory judgment in January 1979. Keystone counterclaimed alleging Marsh was in default of the lease and guilty of fraud. The trial court entered findings of fact and conclusions of law in support of a judgment for Marsh. Keystone appeals.

Several issues have been raised which are restated:

(1) whether the lease agreement included an implied covenant requiring Marsh to continue to operate a supermarket in the leased facility;

(2) whether Marsh breached the lease agreement by failing to pay Keystone the correct amount of percentage rent due;

(3) whether Keystone Square was entitled to conduct discovery in support of its Trial Rule 60(B) motion for relief from judgment;

(4) whether the trial court erred in excluding testimony of certain witnesses for Keystone relating to the amount of damages resulting from Marsh removing its store; and

(5) whether Keystone was entitled to judgment in its favor due to a substantial change in circumstances.

■ The essence of this litigation centers around the lease contract negotiated by the parties. With this in mind the pertinent legal concepts to be applied may be found primarily in the area of contract law. In general a contract is considered as a whole so as to give effect to all its provisions without narrowly concentrating upon some clause or language taken out of context. *Evansville-Vanderburgh Sch. Corp. v. Moll, et al.,* (1976) 264 Ind. 356, 344 N.E.2d 831; *Geyer v. Lietzan,* (1952) 230 Ind. 404, 103 N.E.2d 199. The language used in a contract is given its plain and ordinary meaning unless some technical term is used in a manner meant to convey a specific technical concept. *Thompson, Jr. v. Arnold, Assessor et al.,* (1958) 238 Ind. 177, 147 N.E.2d 903; *THQ Venture v. SW, Inc.,* (1983) Ind.App., 444 N.E.2d 335. The Court must attempt to interpret a contract so as to give effect to the intent of the parties at the time they formed the contract. *Loving v. Ponderosa Systems, Inc.,* (1983) Ind.App., 444 N.E.2d 896. Further, a written contract is presumed to embody the parties' entire agreement and merge within it all prior negotiations. *W.T. Rawleigh Co. v. Snider,* (1935) 207 Ind. 686, 194 N.E. 356.

■ Since this action was originally brought by Keystone, it is appealing from a negative judgment. When reviewing an appeal from a negative judgment, this Court will reverse the trial court's decision only where the evidence leads inexorably to a conclusion opposite that reached by the trial court. *Woodward Ins., Inc. v. White,* (1982) Ind., 437 N.E.2d 59. The record will be reviewed in a light most favorable to the trial court's determination. *Woodward Ins., Inc. v. White, supra.* Further, in a case such as this where the trial court has entered special findings and a proper error has been presented, this Court will apply a two-tier standard of review. First, it must be determined the evidence supports the findings. Then the Court must conclude the findings support the judgment. *Graham v. Review Bd., etc.,* (1979) 179 Ind. App. 497, 386 N.E.2d 699.

The first error raised by Keystone concerns its allegation the lease contains an implied covenant that Marsh will continue to operate a *Marsh supermarket* on the leased premises for the duration of the lease. Keystone contends such implied covenant is a necessary component of this type of lease involving an anchor tenant in a shopping center. Understandably, Marsh disagrees.

This precise legal question appears to be one of first impression in Indiana. However, it is a long-standing principle that implied conditions or covenants are not favored in the law. *Sheets v. Selden,* (1868) 74 U.S. 416. This position is even stronger when the implied condition or covenant is alleged to restrict another party's freedom to enter contracts or engage in other legitimate activities. *Howard Johnson v. Parkside Devlp. Corp.,* (1976) 169 Ind.App. 379, 348 N.E.2d 656.

While the specific point of law before this Court has not been dealt with by a court of this state, this particular area of law has seen a great deal of growth in recent years corresponding to the rapid expansion and development of shopping centers and malls similar to the one involved in this case. Consequently, courts in several other jurisdictions have analyzed this issue and can be looked to for guidance. While the results are mixed, the trend seems to disfavor acknowledging any implied covenant to continue operations.

The Supreme Courts of Kansas, Massachusetts, and Washington, as well as the Appellate Court of Idaho, refused to find an implied covenant in a store lease requiring the tenant to continue operating a supermarket. *Williams v. Safeway Stores, Incorporated,* (1967) 198 Kan. 331, 424 P.2d 541; *Stop & Shop, Inc. v. Ganem,* (1964) 347 Mass. 697, 200 N.E.2d 248; *Fuller Market Basket, Inc. v. Gillingham & Jones, Inc.,* (1975) 14 Wash.App. 128, 539 P.2d 868; *Bastian v. Albertson's, Inc.,* (1982) 102 Idaho 909, 643 P.2d 1079. The Appellate Court of Arizona refused to find that a tenant who was to operate as a "magnet" in a shopping center entered into a lease which contained an implied covenant to continue its operations. *Walgreen Arizona Drug v. Plaza Center Corp.,* (App.1982) 132 Ariz. 512, 647 P.2d 643. In *Woodland Theatres, Inc. v. ABC Intermountain,* (1977) Utah, 560 P.2d 700, the Supreme Court of Utah refused to find an implied covenant requiring a tenant to operate his business in a prudent and businesslike manner so as to generate a higher rent pursuant to the percentage rental agreement.[1]

█ In the case at bar the parties occupied relatively equal bargaining positions at the time the lease was negotiated. Neither party was a novice in the arena of real estate lease negotiations. The lease which was negotiated is a sophisticated document employing clear, precise, and unambiguous language covering a myriad of details regarding the parties' relationship as landlord and tenant.

The lease specifically permits Marsh to assign or sublet the leased premises. In fact Marsh can perform such act without the landlord's permission so long as the lease is assigned or sublet to a supermarket operation. Faced with the clear language of the document negotiated by the parties themselves, this Court will not imply a covenant which would restrict one party's freedom to conduct its own business as it sees fit. The parties were capable of including such a provision in the express language of the contract and failed to do so. To imply such a covenant would amount to rewriting the parties' agreement; an act this Court will not perform.

Next, Keystone argues that Marsh was in default of the lease for payment of an incorrect amount of rent. Specifically, Keystone contends Marsh set off certain liabilities not allowed in the lease against its calculation of the amount of rent due.

---

1.  *See also, Kretch v. Stark,* (1962) Ohio Com.Pl., 20 O.O.2d 385, 193 N.E.2d 307; *Monte Corporation v. Stephens,* (1958) Okl., 324 P.2d 538.

Marsh counters that these setoffs and deductions are allowed in the lease.

The trial court agreed with Marsh and entered these findings:

"24. Section IV of the Agreement of Amendment specifically provides that 'Marsh shall be entitled to set off as a credit against all overage rentals due hereunder, all sums paid by Marsh under this section 12' of the lease, and the sums included in Section 12 of the lease specifically include personal property taxes and license fees.

"25. The Court finds that the terms of the lease and amendment are unambiguous and that Marsh is allowed to take as a credit against overage or percentage rentals the amounts paid by Marsh for personal property taxes and license fees.

"26. Section IV of the Agreement of Amendment provides that Marsh is entitled to setoff [sic] 'all' sums paid under Section 12 of the lease as against 'all' overage rentals due.

"27. The lease and Agreement of Amendement [sic] are unambiguous and Marsh is entitled to take as a credit 'all' such sums paid against 'all' overage rentals due, and therefore, any unused sums are properly carried over from year to year, until used.

"28. Marsh is not in default of its obligations under the Lease and Agreement of Amendment with respect to Item 3 of the Notice of Default with respect ot its accounting procedures and is entitled to take as a credit against percentage rentals due personal property taxes and license fees paid by it and is entitled to carry forward unused credits from year to year until used."

Keystone argues the trial court erred in making this determination because it took into account only the lease agreement and amendment ignoring the lease data summaries. It is Keystone's contention the lease data summaries were intended by the parties to be included in the lease agreement. ■■■ The trial court determined the parties' agreement was clearly and unambiguously embodied in the lease and amendment and did not include the lease data summaries. Such a determination was within the power of the court and supported by the evidence before the trial court. The specific language of the lease agreement and amendment allow the setoffs and deductions applied by Marsh. The clear and unambiguous language of the lease agreement and amendment does support Marsh's application of deductions and setoffs. A trial court has a duty to construe a contract so that all its provisions are harmonious and not contradictory. *R.R. Donnelley & Sons v. Henry-Williams, Inc.*, (1981) Ind.App., 422 N.E.2d 353. The language of the lease data summaries is in direct conflict with the clear and unambiguous language of the lease agreement and amendment. Consequently, the court determined the parties' agreement to be embodied in the lease agreement and amendment. While the general rule requires a trial court to consider separate writings executed at the same time together as a whole when construing a contract, this rule should not be applied arbitrarily without regard to the realities of each peculiar factual situation. *Urbanational Develprs., Inc. et al. v. Shamrock*, (1978) 175 Ind.App. 416, 372 N.E.2d 742. The trial court did not err in the case at bar when it refused to consider the lease data summaries.

■■■ Keystone also argues that Marsh understated the amount of sales which resulted in a corresponding underpayment of the percentage rent due for 1976. The trial court found that Keystone failed to comply with the specific provisions of the lease agreement thereby waiving any complaint regarding the understatement of sales.

The lease provides that Keystone has the right to challenge any report of sales submitted by Marsh. In order to do so Keystone must request an audit or challenge the sales report within 120 days after the sales report has been submitted by Marsh. The sales report shall be "conclusive" unless Keystone requests the audit within the prescribed time period.

In the case at bar Keystone notified Marsh that it was challenging its sales report for the year 1976 sometime in 1978. There is no question that this time period greatly exceeds the 120 days allowed for such a challenge in the lease. Keystone attempts to argue the 120-day time period should not apply because the sales report was not signed by an officer of Marsh as required by the lease. In this regard the trial court found that Keystone was barred from raising that issue also because it was a challenge which should have been brought to Marsh's attention within the 120-day period specified in the lease.

The evidence supports the trial court's findings. The language of the lease agreement is clear and unambiguous. Likewise, the facts clearly illustrate that Keystone failed to comply with the express provisions of the lease. Keystone cannot now complain about the understated sales after it failed to do so for almost two years.

Keystone next alleges the trial court erred in refusing to allow expanded discovery pursuant to its motion for relief from judgment under Ind.Rules of Procedure, Trial Rule 60(B). It is Keystone's contention that a change of circumstances has rendered prospective enforcement of the trial court's judgment inequitable. Further, Keystone argues that discovery is mandatory pursuant to a T.R. 60(B) motion. Keystone's arguments are unavailing for several reasons.

First, there is no prospective application of the trial court's judgment. Keystone attempts to argue that since Marsh was operating a Green Basket supermarket in the leased premises at the time of trial its subsequent termination of those operations renders the trial court's judgment invalid. This argument ignores the substance of the litigation and the trial court's judgment.

Marsh brought an action for declaratory relief. Such an action requires that the court determine what the specific rights, duties and obligations of the respective parties are *at the time of the trial.* While the change of circumstances complained of by Keystone may give rise to

another cause of action, it has absolutely no effect on the trial court's judgment in the action at issue.

Second, a motion for relief from judgment pursuant to T.R. 60(B) is addressed to the sound discretion of the trial court. A grant or denial of such a motion will only be reversed when it is shown the trial court abused its discretion. *Blichert v. Brososky,* (1982) Ind.App., 436 N.E.2d 1165; *Cooper v. Indiana Gas & Water Co.,* (1978) 178 Ind.App. 46, 381 N.E.2d 1250. The movant has the burden of proving the necessity of granting such a motion. *Whitaker v. St. Joseph's Hospital,* (1981) Ind.App., 415 N.E.2d 737; *In re Marriage of Jones,* (1979) 180 Ind.App. 496, 389 N.E.2d 338. The trial court in its ruling, following a hearing, on Keystone's T.R. 60(B) motion clearly states that Keystone failed to carry its burden of proof. The evidence supports the trial court's ruling.

Keystone's argument that the language of T.R. 60(B) mandates that the court order discovery is equally unsound. The grant or denial of motions for discovery rest within the sound discretion of the trial court and will only be reversed for an abuse of that discretion. *Campbell v. Eli Lilly & Co.,* (1980) Ind.App., 413 N.E.2d 1054. Limitations are necessarily placed on discovery to prevent it from becoming a tool of oppression and harassment. The scope of discovery is a matter highly dependent on the facts of each case. Consequently, discretion must be used in determining what discovery is necessary and what is vexatious. Keystone would have this Court throw those considerations out the window. If T.R. 60(B) were construed as Keystone requests, losing parties would be given the power to delve into confidential and personal matters of their opponents through discovery techniques unavailable to them prior to trial merely by filing a T.R. 60(B) motion. Such an application of T.R. 60 does not comport with the ideals of our system of justice. The trial court did not abuse its discretion in re-

fusing to grant discovery or in denying Keystone's motion for relief from judgment.

■ In a closely related argument, Keystone alleges the trial court erred in refusing to allow its witnesses to testify at the hearing on its T.R. 60(B) motion. Specifically, these witnesses were prevented from testifying about the loss of profits experienced by Keystone and its tenants after Marsh closed its operation of the leased premises permanently. Once again the Court directs Keystone's attention to the substance of the litigation. Keystone's action for a declaratory judgment necessitated a determination of the parties' rights, duties, and obligations to each other pursuant to the lease *at the time of trial*. Consequently, evidence of any losses resulting from Marsh's act of withdrawing its operation from the leased premises after trial is irrelevant and properly excluded. *Lovko v. Lovko*, (1978) 179 Ind.App. 1, 384 N.E.2d 166.

Finally, Keystone contends the trial court should have entered judgment in its favor. According to Keystone, Marsh should have been declared in default, the lease terminated, and damages awarded to Keystone. Again Keystone points to the "change in circumstances." Keystone seems unable to place this litigation in its proper context.

Keystone brought an action for declaratory judgment. Judgment was entered in favor of Marsh. In its motion for relief from judgment and on appeal, Keystone continually attempts to muddy the water by referring to extraneous circumstances which occurred after the trial court entered its judgment.

The record in the case at bar supports the findings of the trial court. In turn those findings support the trial court's conclusions of law and judgment. The subsequent change of circumstances so often referred to by Keystone does not affect the validity or propriety of the trial court's judgment. For the reasons stated above the decision of the trial court is affirmed.

Affirmed.

BUCHANAN, C.J., and MILLER, J., concur.