Anthony BUSCHMAN, Appellant–
Plaintiff,

v.

ADS CORPORATION, Appellee–
Defendant.

No. 32A01–0202–CV–63.

Court of Appeals of Indiana.

Jan. 29, 2003.

John G. Deckard, Indianapolis, IN, Attorney for Appellant.

William O. Harrington, Danville, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

After being terminated from his employment, Anthony Buschman filed a complaint against his former employer, ADS Corporation, for unpaid severance pay. ADS moved for summary judgment, alleging that it had not agreed to give Buschman a severance package. The trial court granted ADS's summary judgment motion but denied its request for attorney's fees.

Buschman presents the following issues for our review, which we restate as:

1. Whether the trial court erred when it found that Buschman accepted ADS's offer of employment when he signed ADS's second offer letter and that there was "no meeting of the minds on the severance package."

2. Whether the trial court erred when it found that Buschman had not suf-

ficiently pleaded a claim for non-severance wages.

ADS cross-appeals and presents a single issue for our review, namely, whether the trial court erred when it denied ADS's request for attorney's fees.

We affirm.

### FACTS AND PROCEDURAL HISTORY

In September 2000, Buschman entered into negotiations for employment with ADS as a Business Development Manager. Buschman's primary contact at ADS was manager Keavin Nelson. In a September 21, 2000, interview, Nelson told Buschman that if he accepted employment with ADS he would receive, in part, a guaranteed commission of $6,000 for the last quarter of 2000 and the first quarter of 2001. Buschman told Nelson that in lieu of the guaranteed commission he would prefer to have a "buy out/contingency agreement" that would provide him with severance pay if any major changes occurred at ADS during the first six to twelve months of his employment.[1] Although Nelson told Buschman that ADS did not offer severance packages at the Business Development Manager level, he told Buschman that he would consider such a package if he put the details in writing.

On September 22, 2000, Nelson sent Buschman an offer letter ("First Offer Letter") by facsimile. While the letter mentioned participation in a commission plan, it did not provide for the guaranteed commission that Nelson had mentioned during the interview. Nor did it contain terms regarding a severance package.[2]

---

1. Buschman asked for the severance package because there were "all kinds of rumors in the industry regarding ADS's instability in the market" and he was concerned that the divi-

sion for which he might work "would be sold or file bankruptcy."

2. According to Buschman, the letter did not contain the guaranteed commission provision

Rather, the letter stated that the offer was for "employment 'at-will,'" that Bushman had the right to "terminate at any time," and that ADS had a "similar right." The letter also stated that ADS's offer was contingent upon Bushman's execution of the "Employee Agreement, the Employee Confidential Information and Invention Agreement, [and] the Policy on Standards of Business Conduct and Conflict of Interest...." The last paragraph of the letter read: "Please sign below as your acceptance of our offer." Within hours of receiving the letter, on September 22, 2000, Bushman signed it and wrote "see contingency" under his signature, and then sent the letter by facsimile back to Nelson at his regional office in Bethlehem, Pennsylvania, and to ADS headquarters in Huntsville, Alabama. Along with that letter, Bushman sent a separate letter stating that he would be preparing and sending "contingency document[s]" concerning, in part, the severance package. On September 25, 2000, Bushman prepared three contingency documents, one of which discussed his proposed severance package and provided in part:

> I am requiring that if any major changes should take place within the first 6–12 months of my employment causing my role, territory, or reporting relationships to change, I will receive severance compensation. If the company or division is sold, then the new ownership is bound to this contingency and confidential agreement. This compensation will be equivalent to four months [sic] worth of my monthly base salary.... This will also include four months [sic] of car allowance ($450.00 per month per your offer).

> Major changes include but are not limited to[:] company buyout, company bankruptcy, changes in your role/employment, changes in my role/employment, personnel changes (at the local, regional, and national level that I will be working with), territory changes, compensation package chances [sic], etc.

> I will accept this clause in lieu of the guaranteed commission offer for the fourth quarter of 2000 and the first quarter of 2001. My beginning of work with ADS will incorporate acceptance of these terms.

On September 26, 2000, Bushman sent the contingency documents to Nelson by facsimile, and Nelson confirmed receipt of those documents.

Meanwhile, Nelson had mailed Bushman another copy of the offer letter ("Second Offer Letter").[3] Bushman signed the Second Offer Letter and dated it September 25, 2000, without making any reference to the contingency documents. Later that week, Bushman received the other employment-related documents from ADS, which he signed and dated September 28, 2000. On October 3, 2000, Bushman shipped by Federal Express the Second Offer Letter, ADS's required employment documents, his contingency documents, and a copy of the First Offer Letter to Nelson.

When Bushman talked to Nelson on October 4, Bushman learned that Nelson had been fired. Bushman then spoke with ADS managers Larry Greene and Prentiss Taylor. Those managers assured Bushman that they still wanted Bushman to work for ADS. Bushman, con-

---

or the terms of the severance package because he had "told [Nelson] ... not to include the 'guaranteed commission plan' provision in the offer letter" and that he "would ... provide [Nelson] the details on the 'buyout/contingency plan.'"

**3.** The Second Offer Letter was the original of the First Offer Letter that Nelson had sent by facsimile to Bushman.

cerned about the impact Nelson's firing would have on the terms of his employment, asked, "where does [the employment-related paperwork] stand?" Taylor told Buschman that, "Everything that you have agreed to, everything that is in there is fine." Taylor later told Buschman that Buschman's agreements with Nelson "would stand." Taylor offered to go through the package and "sign his name to every single document that was in [the] package," but Buschman decided that that would not be necessary. Taylor then told Buschman that he would "get ahold [sic] of all that paperwork and make sure it gets to the proper people in Huntsville." A couple of days later, Taylor reiterated to Buschman that he would make sure that Buschman's paperwork was processed properly. Buschman also asked manager Larry Greene about the paperwork, and Greene replied, "Hey, no problem, its been taken care of. Prentiss Taylor is running that office now ... he'll handle it, he'll take care of it."

Buschman began working for ADS on October 16, 2000. Shortly thereafter, Taylor either left or was fired. In January 2001, ADS terminated Buschman. Buschman demanded from ADS "all of the wages and other forms of compensation" due him including his severance package. ADS did not pay Buschman any of the severance benefits.

On July 11, 2001, Buschman filed a complaint against ADS for payment of the severance package. On December 14, 2001, ADS filed a motion for summary judgment alleging that it does not have to pay Buschman the severance package because severance pay is not a wage under the Indiana Wage Payment Statute. On December 21, 2001, ADS filed a second motion for summary judgment claiming that ADS and Buschman never formed a contract regarding the severance package.

The trial court granted ADS's motions for summary judgment, concluding in relevant part:

> 3. On 25 September 2000, Plaintiff accepted Defendant's offer of employment ... *without the "See Contingency" counteroffer.*

> \* \* \*

> [T]his Court must find that there was no meeting of the minds of the parties on a severance package Plaintiff asserts and that the Plaintiff entered into a contract at-will set out in Defendant's [Second Offer Letter]. . . .

ADS then filed a motion for attorney's fees, which the court denied. Buschman now brings this appeal, and ADS cross-appeals.

## DISCUSSION AND DECISION

Summary judgment is appropriate only if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a grant of summary judgment, this court stands in the shoes of the trial court and applies the same applicable standard. *Duncan v. Duncan,* 764 N.E.2d 763, 765 (Ind.Ct.App.2002), trans. denied. Specific findings and conclusions by the trial court are not required, and although they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasoning for granting or denying summary judgment. *Allied Signal, Inc. v. Herring,* 757 N.E.2d 1030, 1034 (Ind.Ct. App.2001). A grant of summary judgment may be affirmed upon any theory supported by the designated materials. *Jacques v. Allied Bldg. Servs. of Indiana,* 717 N.E.2d 606, 608 (Ind.Ct.App.1999).

When the movant's affidavits and other evidence demonstrate the lack of a genuine issue, the burden shifts to the opposing party to demonstrate the existence of a genuine issue for trial. *Id.* Any doubt about the existence of a factual issue should be resolved against the movant, with all properly asserted facts and reasonable inferences construed in favor of the nonmovant. *Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 261 (Ind.1994). The party appealing the grant of a motion for summary judgment bears the burden of persuading this court that the trial court erred. *Foster v. Evergreen Healthcare, Inc.*, 716 N.E.2d 19, 24 (Ind.Ct.App.1999), *trans. denied.*

### Issue One: Acceptance of ADS's Employment Offer

█ Buschman contends that the trial court erred when it granted ADS's motion for summary judgment on his contract claim. Specifically, Buschman maintains that the trial court erred when it determined that he accepted ADS's offer and entered into a contract at-will when he signed the Second Offer Letter. Buschman alleges that he made a counteroffer when he signed the Second Offer Letter and stapled his contingency documents to it, including the First Offer Letter that contained the "see contingency" language. We must disagree.

█ The question of whether a certain or undisputed set of facts establishes a contract is one of law for the trial court. *Keating v. Burton*, 617 N.E.2d 588, 592 (Ind.Ct.App.1993), *trans. denied.* Contract formation requires mutual assent on all essential contract terms. *DiMizio v.*

*Romo*, 756 N.E.2d 1018, 1022 (Ind.Ct.App. 2001), *trans. denied.* Assent to the terms of a contract may be expressed by acts which manifest acceptance. *Pinnacle Computer Servs., Inc. v. Ameritech Pub., Inc.*, 642 N.E.2d 1011, 1013 (Ind.Ct.App. 1994).[4] Acceptance may be expressed in writing. *Young v. Bryan*, 178 Ind.App. 702, 368 N.E.2d 1, 3 (1977). Under Indiana law, a person is presumed to understand and assent to the terms of the contracts he signs. *Lake County Trust Co. v. Wine*, 704 N.E.2d 1035, 1040 (Ind. Ct.App.1998).

In this case, Buschman signed ADS's Second Offer Letter on September 25, 2000, which, read in part:

> This letter is not to be considered a contract of employment. Our offer is for employment 'at will.' That is, you have the right to terminate at anytime and the company has a similar right. You should also be aware that ADS has a six-month introductory employment period policy. This introductory period is for both you and the company, and will be utilized to train you and evaluate your performance.
>
> \* \* \*
>
> [W]e ... look forward to receiving your written acceptance of this offer. *Please sign below as your acceptance of our offer.*

(Emphasis added). When he signed the Second Offer letter, without making any reference in the letter to the severance package, Buschman assented to the terms of ADS's offer. *See Pinnacle*, 642 N.E.2d at 1013 (concluding company assented to

---

4. Buschman contends that ADS accepted his severance package by employing him because in his contingency documents regarding the severance package he provided that "[m]y beginning of work with ADS will incorporate acceptance of these terms." We need not address that contention since we have concluded Buschman's severance package was not a counteroffer, but was part of the parties' prior negotiations merged into the Second Offer Letter.

terms of contract when its agent signed contract).

■ Still, Buschman contends that by stapling the First Offer Letter, signed September 22, 2000, and the contingency documents to the Second Offer Letter, signed September 25, 2000, he rejected ADS's offer and made a counteroffer. Buschman has submitted no authority to support that contention. The Second Offer Letter is complete and unambiguous on its face. In the absence of ambiguity, it is not within the function of the courts to look outside an instrument to arrive at the intention of the parties. *McCae Mgmt. Corp. v. Merchs. Nat. Bank & Trust Co.*, 553 N.E.2d 884, 887 (Ind.Ct.App.1990), *trans. denied.* A written contract is presumed to embody the parties' entire agreement and merge within it all prior negotiations. *Keystone Square Shopping Ctr. Co. v. Marsh Supermarkets, Inc.*, 459 N.E.2d 420, 422 (Ind.Ct.App.1984) (citing *W.T. Rawleigh Co. v. Snider*, 207 Ind. 686, 194 N.E. 356 (1935)). Stated differently:

> In the absence of mistake or fraud, a written contract merges all prior and contemporaneous negotiations in reference to the same subject, and the whole engagement of the parties and the extent and manner of their undertaking are embraced in the writing. Moreover, all verbal agreements made at or before the time of the execution of a contract are to be considered as merged in the written instrument.

17A AM. JUR.2D Contracts § 397 at 424 (1991). Any oral promise that Nelson may have made regarding the severance package or the guaranteed commissions was merged into the writing. *See id.* And the First Offer Letter, which contained the "see contingency" language and was signed September 22, 2000, [whether it was an accepted contract or a counteroffer], was merged into the Second Offer

Letter, signed September 25, 2000. *See Skaggs v. Merchs. Retail Credit Ass'n, Inc.*, 519 N.E.2d 202, 204 (Ind.Ct.App. 1988) (holding prior contracts are merged into later contracts and written contracts embody all prior negotiations).

Finally, the contingency documents that define the severance package cannot be considered in determining whether ADS agreed to give Buschman a severance package. Buschman did not refer to those documents in the Second Offer Letter, nor was ADS a party to those documents. And the contingency documents conflicted with the "at-will" provisions of the Second Offer Letter. *See Keystone*, 459 N.E.2d at 424 (holding trial court did not err in holding parties' agreement was embodied within four corners of contract where contract was unambiguous and other document executed with contract conflicted with its terms). Indeed, Buschman does not contend that the Second Offer Letter, which contains the language "Please sign below as your acceptance of our offer," is ambiguous. Buschman accepted ADS's offer when he signed and later returned the Second Offer Letter and the other employment-related documents required by ADS.

Buschman also maintains that there is a genuine issue of material fact whether ADS later told him that it would give him the severance package. He claims that ADS has not refuted its statements that "Buschman's 'contingency documents' ... would stand." He further alleges that ADS "acknowledg[ed] and agree[d] to the severance package." In his reply brief, Buschman contends that Taylor "confirm[ed] the parties' agreement (including the severance package)." Finally, Buschman maintains that the uncontroverted sworn testimony shows that "Taylor and Greene had acknowledged and committed to the severance package."[5]

---

**5.** Nothing in the evidence suggests that any ADS manager actually agreed to give Busch-

But even if ADS orally agreed to give Buschman a severance package after he signed the Second Offer Letter, Buschman has not provided the additional consideration necessary for an oral modification of a written contract. *See Hamlin v. Steward,* 622 N.E.2d 535, 539 (Ind.Ct.App.1993) ("A written agreement may be changed by a subsequent one orally made, upon a sufficient consideration."). Buschman contends that he provided consideration for the severance package by working for ADS and by forgoing Nelson's offer of guaranteed commissions. However, Buschman's work at ADS was the consideration for ADS's offer embodied in the Second Offer Letter and is not new consideration. And by forgoing the guaranteed commissions, Buschman did not give new consideration for the severance package because, as we have determined, any offer of guaranteed commissions was part of the parties' prior negotiations and merged into the Second Offer Letter.

In sum, Buschman accepted ADS's offer of employment when he signed the Second Offer Letter without any reference in that letter to the severance package. Any negotiations regarding the guaranteed commissions or severance package were merged into the Second Offer Letter. If Buschman did not intend to be bound by ADS's offer and wanted to make a counteroffer, he should not have signed the Second Offer Letter, accepting that offer, and the other employment-related documents that ADS had tendered to him.[6]

### Issue Two: Non–Severance Wages

■■■■■ Buschman also contends that the court erred when it found that he did not properly plead his claim for late and non-payment of his final two weeks' wages. Indiana Trial Rule 8 provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief to which the pleader deems [himself] entitled." Ind. Trial Rule 8(A)(1)-(2). Under notice pleading, the issue of whether a complaint sufficiently pleads a certain claim turns on "whether the opposing party has been sufficiently notified concerning the claim . . . so as to be able to prepare to meet it." *Noblesville Redevelopment Comm'n v. Noblesville Assoc. Ltd.,* 674 N.E.2d 558, 563–64 (Ind.1996) (citation omitted). A complaint's allegations are sufficient if they put a reasonable person on notice as to why a plaintiff sues. *Id.* at 564. Notice pleading merely requires pleading the operative facts so as to place the defendant on notice as to the evidence to be presented at trial. *Palacios v. Kline,* 566 N.E.2d 573, 576 (Ind.Ct.App.1991). For a defendant to make efficient and educated legal decisions regarding his case, the complaint must put the defendant on notice concerning why it is potentially liable and what it stands to lose. *Butler v. Kokomo Rehab. Hosp., Inc.,* 744 N.E.2d

---

man a severance package. Rather, in his affidavit Buschman states, "No one at ADS ever objected to or denied in any way the severance package contained in these documents." Indeed, in his deposition, when asked if Taylor had specifically referred to the contingency documents when he told Buschman that he would take care of Buschman's paperwork, Buschman replied "He didn't make specific reference to anything. He just said the package of paperwork."

**6.** Because we conclude that Buschman accepted ADS's offer without a severance package, we need not address Buschman's contention that he is entitled to treble damages under the Indiana Wage Payment Statute, Ind.Code § 22–2–5–1. However, after this appeal was filed, this court held that a preagreed upon severance package was not a wage under the statute. *Design Industries, Inc. v. Cassano,* 776 N.E.2d 398 (Ind.Ct.App. 2002)

1041, 1047 (Ind.Ct.App.2001), *trans. denied.*

Here, Buschman alleged the following operative facts in relevant part: 1) ADS made Buschman an offer of employment; 2) Buschman made his acceptance of employment subject to certain contingencies; 3) Buschman discussed those contingencies with ADS agent Keavin Nelson; 4) ADS accepted those contingencies and employed Buschman; 5) ADS terminated Buschman in January 2001. After providing the factual basis for his complaint, Buschman stated:

> 11. Despite repeated demand by Buschman of ADS, ADS has failed and refused to pay Buschman all of the wages and other items of remuneration owed to him, and there is *presently owed* to Mr. Buschman, as wages, four times his monthly base pay of $5,208.33, for an aggregate wage amount of $20,833.32, and four times his monthly car allowance ($450.00 per month) for an aggregate of $1,800.00.
>
> 12. Pursuant to Indiana law, and as a result of ADS's failure and refusal to pay Buschman the amounts owed to him, despite demand [sic] therefore, ADS is now obligated to Buschman for treble the amounts owed, together with Mr. Buschman's attorney's fees and costs of this action.

> \* \* \*

> Wherefore ... Buschman ... prays for judgment in its [sic] favor and against ... ADS ... but which amount is at least $67,899.00, together with an award of attorney's fees herein, and costs, and for all other relief appropriate in the premises.

(Emphasis added).

Buschman now claims that ADS owes him wages for his final two weeks of work. Buschman submits that in notice pleading he is not required to "itemize each and every form of 'wages and other items of remuneration owed to him.'" However, we agree with the trial court that Buschman failed to include a claim for nonpayment of weekly wages in his complaint. Although Buschman's complaint mentions that ADS failed to pay "all of the wages and other items of remuneration owed to him" despite his "repeated demands," his complaint then states that ADS "presently" owes Buschman four times his monthly base salary and four times his monthly car allowance. Those are the exact terms of Buschman's proposed severance package. Thus, the trial court did not err in finding that Buschman failed to plead a claim for non-severance wages.

### Cross–Appeal

ADS contends that the trial court erred when it denied its petition for attorney's fees. Generally, litigants must pay their own attorney's fees in the absence of a statute, stipulation, or agreement providing otherwise. *Garage Doors of Indianapolis, Inc. v. Morton*, 682 N.E.2d 1296, 1303 (Ind.Ct.App.1997), *trans. denied.* The party requiring assessment of attorney's fees has the burden of proof at trial, and the losing party on the issue appeals a negative judgment. *Chrysler Motor Corp. v. Resheter*, 637 N.E.2d 837, 838 (Ind.Ct.App.1994), *trans. denied.* On appeal, we will not reverse a negative judgment unless it is contrary to law. *Infinity Products, Inc. v. Quandt*, 775 N.E.2d 1144, 1149 (Ind.Ct.App.2002). To determine whether the judgment is contrary to law, we consider the evidence in the light most favorable to the appellee together with all the reasonable inferences to be drawn therefrom. *Id.* We will reverse the judgment only if the evidence leads to but one conclusion and the trial court reached the opposite conclusion. *Id.*

ADS asserts that it is entitled to attorney's fees under Indiana Code Section 34–52–1–1(b), which provides in relevant part:

> In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
>
> (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
>
> (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
>
> (3) litigated the action in bad faith.

A claim is "frivolous" if it is established that it was brought for the purpose of an improper motive such as harassment or if legal counsel is unable to make a good faith, rational argument on the merits of the case. *Commercial Coin Laundry Systems v. Enneking,* 766 N.E.2d 433, 441 (Ind.Ct.App.2002). A claim is unreasonable if no reasonable attorney would consider it justified or worthy of litigation under the totality of the circumstances, including the law and facts known at the time the claim is filed. *Id.* In addition, we have considered a claim "groundless" only if no facts exist which support a legal claim presented by the losing party. *Id.*

ADS contends that Buschman's claim is frivolous, groundless, and unreasonable, because Buschman did not make any reference to the Second Offer Letter in his complaint or in opposing ADS's summary judgment motion. And ADS asserts that the Second Offer Letter is "a document which demonstrates unequivocally that Mr. Buschman's acceptance of ADS's Offer Letter was not qualified by any so-called 'contingency.'" In support of its argument, ADS relies on this court's opinion in *Kahn v. Cundiff,* 533 N.E.2d 164 (Ind.Ct.App. 1989), *aff'd,* 543 N.E.2d 627 (Ind.1989) (up-holding award of attorney's fees where plaintiff's attorney admittedly filed claim against defendant under theory attorney knew was unsupported by the facts).

But ADS's reliance on *Kahn* is misplaced. Despite the trial court's ultimate ruling on summary judgment, Buschman presented a good faith argument that, between his negotiations with Nelson, Taylor, and Greene, and his preparation of the contingency documents, he thought ADS had accepted his proposed severance package. It is well established that an award of attorney's fees is not justified merely because a party loses on the merits. *Chrysler,* 637 N.E.2d at 840. Moreover, the trial court issued thoughtful findings on the attorney's fees issue. ADS has not shown that the evidence viewed most favorable to the judgment leads uncontrovertibly to the conclusion that ADS is entitled to attorney's fees. *See Id.*

## CONCLUSION

We agree with the trial court's conclusion that Buschman accepted ADS's offer when he signed the Second Offer Letter without any reference to the "contingency documents." The First Offer Letter and the contingency documents were prior negotiations between Buschman and ADS that were merged into the Second Offer Letter, which constituted the parties' final written agreement.

Further, we conclude that the trial court did not err when it found that Buschman failed to properly plead a claim for non-severance wages. In his complaint, Buschman only included the facts concerning the severance package negotiations and alleged that ADS presently owed him four times his monthly car allowance and base salary, the amount due under the severance package. Buschman's assertion

that ADS owes him two weeks of wages under the wage payment statute raises a different theory for recovery.

Finally, ADS failed to meet its burden to show the evidence leads unerringly to the conclusion that Buschman's contract claim was frivolous, unreasonable, or groundless.

Affirmed.

SHARPNACK, J., and
FRIEDLANDER, J., concur.