NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 21, 2017[*]
Decided October 12, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

Nos. 15-1374, 17-1217 & 17-1722

| | |
|---|---|
| STEPHANIE S. CARLSON, | Appeals from the United States |
| *Plaintiff-Appellant,* | District Court for the Southern District of Indiana. |
| *v.* | |
| | Nos. 3:12-cv-00195-RLY-WGH, |
| CSX TRANSPORTATION, INC., | 3:11-cv-00066-RLY-MPB & |
| *Defendant-Appellee.* | 3:13-cv-00202-RLY-MPB |
| | Richard L. Young, *Judge.* |

**ORDER**

Stephanie Carlson began working for CSX Transportation in 2002. During her term of employment she filed four lawsuits against CSX. In this consolidated appeal she

---

[*]This appeal is successive to case no. 13-1944 and is being decided by the same panel under Operating Procedure 6(b). We have agreed to decide these cases without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

challenges the district court's order enforcing an agreement to settle three of those lawsuits.

As relevant here, Carlson sued CSX in 2011 alleging that the company had breached a 2009 settlement of an earlier lawsuit. That 2011 suit also claimed that CSX had subjected Carlson to discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. The district court granted CSX's motion to dismiss this 2011 suit, but we overturned the dismissal and remanded for further proceedings. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819 (7th Cir. 2014). Meanwhile, Carlson had sued CSX two more times, in 2012 and 2013, again claiming employment discrimination and retaliation in violation of Title VII. As the three lawsuits proceeded, Carlson retained counsel to represent her in each.

The 2012 lawsuit was resolved first, when the district court entered summary judgment for CSX. That decision prompted the first of these appeals, case no. 15-1374. With that appeal pending, Carlson and CSX participated in a settlement conference conducted in April 2016 by a magistrate judge. At that conference the parties agreed to settle Carlson's claims in all three cases, including the 2012 suit underlying the pending appeal. At that conference Carlson, her attorney, and the magistrate judge signed an initial agreement containing the essential terms of the settlement. That initial agreement provided that Carlson would execute a more detailed, final settlement agreement within 23 days. In light of this resolution, Carlson and CSX jointly asked us to vacate the oral argument already scheduled in case no. 15-1374, which we did. Afterward, however, Carlson balked and refused to sign the final settlement agreement. Her lawyers asked to withdraw in both the district court and this court, and CSX asked the district court to enforce the final settlement agreement.

The district court granted CSX's request in January 2017. The court found that Carlson had knowingly and voluntarily released all of her claims when she signed the initial settlement agreement. The court rejected Carlson's assertion that, when she signed that document, she wasn't of sound mind because of lack of sleep and the side effects of medication. The court noted that Carlson had been represented by counsel throughout the negotiations and had demonstrated her competence during on-the-record discussions with the magistrate judge. The district court also rejected Carlson's assertion that some terms of the initial agreement were ambiguous, thus preventing a meeting of the minds. Likewise, the court rejected Carlson's contention that CSX had materially breached the terms of the initial agreement. Finally, the district court rejected Carlson's argument that, at most, only the initial agreement was enforceable. The court

reasoned that the more detailed final agreement is consistent with the terms of the initial agreement and ordered the parties to comply with the final agreement. The court further dismissed the pending 2011 and 2013 lawsuits and said it will dismiss the 2012 lawsuit as soon as we remand that case.

Carlson then filed a notice of appeal for each of the three lawsuits, including the 2012 suit already before us in case no. 15-1374. We dismissed her new appeal relating to that lawsuit, leaving two new appeals, case nos. 17-1217 and 17-1222. We have consolidated the three appeals for decision.

Carlson argues that the district court erred when it granted CSX's motion to enforce the final settlement agreement. We review for abuse of discretion a decision to enforce a settlement agreement, and we review de novo whether a settlement agreement exists. *Beverly v. Abbott Labs.*, 817 F.3d 328, 332–33 (7th Cir. 2016). The initial and final settlement agreements between Carlson and CSX are confidential and have been filed under seal, so we discuss specific provisions only to the extent publicly disclosed.

Indiana law governs whether the parties entered into an enforceable settlement. *See Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007). "Under Indiana law, a person is presumed to understand and assent to the terms of the contracts he signs." *Buschman v. ADS Corp.*, 782 N.E.2d 423, 428 (Ind. Ct. App. 2003). "All that is required to render a contract enforceable is reasonable certainty in the terms and conditions of the promises made, including by whom and to whom; absolute certainty in all terms is not required. Only essential terms need be included to render a contract enforceable." *Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 813 (Ind. 2009).

Carlson acknowledges that immediately after the April 2016 settlement conference she signed an initial agreement to settle her three cases. That initial agreement contained specific terms but provided that the parties would execute a fully binding and more detailed agreement within 23 days. The agreement also allowed Carlson to revoke acceptance of the agreement within seven days by providing written notice to CSX's attorney, but there is no evidence that she attempted to revoke the agreement. In this court Carlson argues that CSX deviated from or breached terms of the initial agreement. For that reason, she says, there wasn't a meeting of the minds and she was justified in refusing to execute the final settlement agreement.

Carlson's primary complaint appears to be that she wants CSX to pay for her health insurance until she is 65. The initial settlement agreement refers to Carlson's health insurance payments but does not say CSX will pay for the insurance until she is 65. Carlson argues that the terms regarding her health insurance were modified to her detriment in the final agreement. But the provisions regarding her health insurance in the final agreement are consistent with the language in the initial agreement. The district court did not err in holding that the terms of the initial agreement were not ambiguous and thus the settlement contract is enforceable.

Carlson also complains that CSX temporarily cancelled her insurance causing her to incur prescription costs, failed to follow ordinary payroll practices, and failed to make timely payments. The district court found that Carlson did not show that she suffered any actual harm from these issues and properly declined to void the settlement agreement based on these alleged breaches.

The district court did not abuse its discretion when it enforced the final settlement agreement between Carlson and CSX. Accordingly, we AFFIRM the district court's order dismissing Carlson's 2011 and 2013 lawsuits (appeal nos. 17-1217 and 17-1722) and VACATE the district court's judgment in appeal no. 15-1374 and REMAND for dismissal in light of the parties' settlement.